**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

William E.,

      Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,[1]

      Defendant.

Case No. 20-cv-1545 (TNL)

**ORDER**

Dana W. Duncan, Duncan Disability Law, S.C., 555 Birch Street, Nekoosa, WI 54457; and Jennifer G. Mrozik, Hoglund, Chwialkowski & Mrozik, PLLC, 1781 County Road B, Roseville, MN 55113 (for Plaintiff); and

Elvi Jenkins, Special Assistant United States Attorney, Social Security Administration, 1301 Young Street, Suite 340, Mailroom 104, Dallas, TX 75202 (for Defendant).

## I. INTRODUCTION

Plaintiff William E. brings the present case, contesting Defendant Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

This matter is before the Court on the parties' cross-motions for summary judgment.  ECF Nos. 19, 25.  For the reasons set forth below, Plaintiff's motion is granted and the Commissioner's motion is denied.

## II. PROCEDURAL HISTORY

This case is limited to the proceedings that occurred before the administrative law judge ("ALJ") following a prior remand.  *See generally William E. v. Berryhill*, No. 18-cv-2668 (DTS) (D. Minn. May 9, 2019) (order granting claimant's motion for summary judgment, denying Commissioner's motion for summary judgment, and remanding case).

On March 10, 2020, the ALJ held a hearing.  *See generally* Tr. 717-51.  Attorney Dana Duncan appeared on behalf of Plaintiff at the hearing.  Tr. 717.  As part of the hearing, the ALJ identified the exhibits being admitted into evidence: "1A through 13A, 1B through 27B, 1D through 16D, 1E through 25E, and 1F through 14F."  Tr. 718.

Following the hearing, the ALJ sought additional opinion evidence in the form of written interrogatories from Michael A. Lace, Psy.D., an impartial medical expert.  Tr. 972, 689; *see generally* Tr. 973-81.  Among other things, Lace opined that Plaintiff was "[l]imited to a substance[-]free workplace"; "no fast-paced production line work"; and "routine tasks."  Tr. 981.

On April 23, the ALJ sent a letter to Attorney Duncan, proffering Lace's responses as additional evidence to be entered into the record.  Tr. 962-63.  In the letter, the ALJ described this additional evidence as "17F – Interrogatories by Dr. Lace."  Tr. 962.  It is undisputed that there was a typographical error in the exhibit number.  *See* Comm'r's Mem. in Supp. at 2, 9, 12, ECF No. 26.  Lace's interrogatory responses were actually

contained in Exhibit 16F, not 17F.  *See, e.g.*, Comm'r's Mem. in Supp. at 2, 9; *see also* ECF No. 16-1 at 5.

The letter instructed counsel to log into the administrative record to view this additional evidence.  Tr. 962.  The letter further identified a number of actions that could be taken in response, including but not limited to requesting a supplemental hearing.  Tr. 962-63.  The letter closed with the following:

> If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records.  Unless I determine the claimant is eligible for a supplemental hearing, I will enter the new evidence in the record and issue my decision.

Tr. 963.

Attorney Duncan received the ALJ's letter on April 27.  Aff. of Dana W. Duncan ¶ 4, ECF No. 21.  Accordingly, any response to the ALJ's letter was due on or before May 7, 10 days later.

On May 3, Attorney Duncan "checked the electronic record and learned that [E]xhibit 17F, Dr. Lace's interrogatories were not exhibited."  Duncan Aff. ¶ 5.  Attorney Duncan "called the Minneapolis Office of Hearings Operations and left a message requesting that Exhibit 17F be placed into the electronic record."  Duncan Aff. ¶ 5.

On May 7, Attorney Duncan "checked the electronic record again."  Duncan Aff. ¶ 6.  Attorney Duncan "learned that the [unfavorable] decision in this matter, *dated May 11, 2020*[,] was completed and *uploaded into the electronic record on May 6, 2020*, following a review of the record."  Duncan Aff. ¶ 7 (emphasis added); *see generally* Tr.

689-705 (dated May 11, 2020).   Attorney Duncan "called the Minneapolis Office of

Hearings Operations and left a message requesting Exhibit 17F be placed into the

electronic record."   Duncan Aff. ¶ 7.   Four days later, on May 11, Attorney Duncan

received the ALJ's decision of the same date in the mail.   Duncan Aff. ¶¶ 8-9; *see*

*generally* Ex. A to Duncan Aff., ECF No. 21-1.

In relevant part, the ALJ determined that Plaintiff had the residual functional

capacity to perform light work with certain postural, manipulative, and environmental

limitations as well as the following additional limitations:

> with regards to concentration, persistence, and pace, limited
> to occasional changes in work setting; no public interaction;
> brief and superficial interaction with others, meaning that the
> fifth digit of the DOT code is an 8; no complex decision
> making; no rapid assembly-line type work, meaning there
> would be daily quotas but not hourly quotas; [and] limited to
> an environment free from illicit drugs and alcohol.

Tr. 696.   Of the medical opinion evidence, the ALJ gave the greatest weight ("significant

weight") to Lace's interrogatory responses when determining Plaintiff's residual

functional capacity.   Tr. 701; *see* Tr. 701-02.

On May 13, Attorney Duncan sent a letter to the ALJ, noting the procedural

irregularities and requesting that the decision be vacated.   Tr. 712-13; *see also* Duncan

Aff. ¶ 11; Ex. B to Duncan Aff., ECF No. 21-1.   That request apparently was not granted.

Thereafter, Plaintiff filed the instant action, challenging the ALJ's decision.   *See*

*generally* Compl., ECF Nos. 1 through 1-4.   The parties have filed cross motions for

summary judgment.   ECF Nos. 19, 25.   This matter is now fully briefed and ready for a

determination on the papers.

## III. ANALYSIS

### A.  Legal Standard

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision.").

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher*, 652 F.3d at 863. The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Id.*; *accord Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a).  This standard

is met when a severe physical or mental impairment, or impairments, renders the

individual unable to do his previous work or "any other kind of substantial gainful work

which exists in the national economy" when taking into account his age, education, and

work experience.  42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process.

20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step
> process, considering whether: (1) the claimant was employed;
> (2) []he was severely impaired; (3) h[is] impairment was, or
> was comparable to, a listed impairment; (4) []he could
> perform past relevant work; and if not, (5) whether []he could
> perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  In general, the burden of proving

the existence of disability lies with the claimant.  20 C.F.R. § 404.1512(a).

## B. Procedural Due Process

Plaintiff asserts that he did not receive a full and fair hearing and his procedural

due process rights were violated.  Attorney Duncan states that he did not have access to

Lace's interrogatory responses "until after this matter was filed in Federal District

Court."   Duncan. Aff. ¶ 12.   Attorney Duncan states that, if Lace's interrogatory

responses "had been available to review, [he] would have requested a supplemental

hearing to cross-examine . . . Lace about additional limitations" and "would have

requested further vocational testimony which would have minimally include[d] . . . [certain] limitations found by . . . Lace."[2]  Duncan Aff. ¶ 14.

The Commissioner responds that the ALJ properly proffered Lace's interrogatory responses to Plaintiff and "a minor typographical error, from Exhibit 16F to Exhibit 17F, does not change the content of the electronic record available to Plaintiff's attorney." Comm'r's Mem. in Supp. at 2.  According to the Commissioner, as of May 3, when Attorney Duncan "attempted to access the electronic record to review the interrogatories," "Lace's response to the interrogatories would have been clearly labeled as such in the electronic record at Exhibit 16F."  Comm'r's Mem. in Supp. at 10; *see also id.* ("However, the ALJ had already informed Plaintiff that the responses were added to the record and Plaintiff could clearly see the exhibit that had been added to the file under Exhibit 16F.").  The Commissioner maintains this was sufficient notice and Plaintiff failed to respond timely to the ALJ.

Significantly, it is also the Commissioner's position that the ALJ's decision was issued on May 11.  *See, e.g.*, Comm'r's Mem. in Supp. at 1 ("More than 10 days later, the ALJ issued his decision on May 11, 2020."), 11 ("After the ALJ did not receive a response from Plaintiff regarding the interrogatories by May 7, 2020, he issued his unfavorable decision on May 11, 2020.").  The Commissioner has not addressed the evidence in the record before the Court that the ALJ's decision was in fact *issued on May 6.*

---

[2] Two of the limitations identified by Plaintiff—"[l]imited to a substance[-]free workplace" and "[l]imited to no fast-paced production line work"—were in fact incorporated into the ALJ's residual-functional-capacity determination. Tr. 696 (including "no rapid assembly-line type work, meaning there would be daily quotas but not hourly quotas" and "an environment free from illicit drugs and alcohol" as additional limitations for residual functional capacity).

"A disability claimant is entitled to a full and fair hearing under the Social Security Act."  *Hepp v. Astrue*, 511 F.3d 798, 804 (8th Cir. 2008) (quotation omitted); *see also, e.g.*, *Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010).  "Procedural due process under the Fifth Amendment also requires full and fair hearings for disability benefits."[3] *Hepp*, 511 F.3d at 804 (footnote omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971)); *accord Passmore*, 533 F.3d at 663.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted); *cf. Haynes v. Apfel*, 205 F.3d 1346, 2000 WL 84500, at *1 (8th Cir. 2000) (per curiam).  "Adequate notice is that which is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Wilburn*, 626 F.3d at 1003 (quotation omitted).

"Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends on the particular circumstances involved."  *Id.* (quotation omitted); *see also Mathews*, 424 U.S. at 334-35.  "Social [S]ecurity disability hearings are non-adversarial proceedings and therefore do not require full courtroom procedures."  *Hepp*, 511 F.3d at 804; *accord Wilburn*, 626 F.3d at 1003; *Passmore*, 533 F.3d at 663-64.  Additionally, "due process does not afford [S]ocial [S]ecurity claimants an absolute right to cross-examine individuals who submit a report."  *Passmore*, 533 F.3d

---

[3] There being no discussion of the issue, the Court assumes, as the parties have done, that "due process applies without determining whether [Plaintiff] had a property interest in the benefits."  *Hepp*, 511 F.3d at 804 n.5; *see also, e.g.*, *Wilburn*, 626 F.3d at 1002 n.2; *Passmore v. Astrue*, 533 F.3d 658, 663 n.4 (8th Cir. 2008).

665; *see, e.g.*, *Varela-Duron v. Colvin*, No. 2:14-cv-02030-MEF, 2015 WL 4573022, at *3 (W.D. Ark. July 29, 2015); *Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1138 (N.D. Ia. 2011).

The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") outlines procedures for proffering evidence received post-hearing.[4] *See generally Posthearing Evidence – When Proffer Is Required*, Hearings, Appeals & Litig. Law Manual § I-2-7-1, Soc. Sec. Admin., *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-1.html.  Proffering evidence "provide[s] an opportunity for a claimant (and appointed representative, if any) to review additional evidence that has not previously been seen and that an adjudicator proposes to make part of the record." *Id.* § I-2-7-1.A.  It "allows a claimant to . . . [c]omment on, object to, or refute the evidence by submitting other evidence," or, "[i]f required for a full and true disclosure of the facts, [to] cross-examine the author(s) of the evidence." *Id.*  "When an [ALJ] receives additional evidence after the hearing from a source other than the claimant . . . and the ALJ proposes to admit the evidence into the record, he or she will proffer the evidence to the claimant . . . ." *Id.* § I-2-7-1.B; *see also id.* § I-2-7-1.B ("An ALJ must always proffer interrogatory responses from a medical or vocational expert, or posthearing consultative examination reports.").

An ALJ

---

[4] The Court fully recognizes that the HALLEX "'is not a regulation.  It has no legal force, and it does not bind the [Social Security Administration].'"  *Dols v. Saul*, 931 F.3d 741, 749 (8th Cir. 2019) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam)).  It serves as a useful resource, however, in framing how the issue in this case came to pass.

proffers evidence by sending a letter to the claimant and appointed representative, if any, that provides the following information:

- A time limit to object to, comment on, or refute the proffered evidence, and to submit a written statement as to the facts and law that the claimant believes apply to the case in light of the evidence submitted;

- A time limit to submit written questions to the author(s) of the proffered evidence;

- When applicable . . . , an opportunity to request a supplemental hearing, including the opportunity to cross-examine the author(s) of any posthearing evidence; and

- The opportunity and instructions for requesting a subpoena for the attendance of witnesses or the submission of records.

*Proffer Procedures*, Hearings, Appeals & Litig. Law Manual § I-2-7-30.A, Soc. Sec. Admin., *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html.

The ALJ's April 23 letter identified the evidence he proposed to exhibit, albeit by the incorrect exhibit number, and "presented many procedures that could have satisfied due process, including a hearing," along with a 10-day deadline by which to respond. *Varela-Duron*, 2015 WL 4573022, at *4. *See* Tr. 962-63. The Commissioner contends "that the difference between 16F and 17F was clearly a scrivener's error that had no effect on the outcome of Plaintiff's case because Plaintiff had adequate notice of the new exhibit." Comm'r's Mem. in Supp. at 10. Were this merely a matter of the ALJ's typographical error, the Court would be inclined to agree with the Commissioner. The problem here is that the ALJ *also* issued the decision *before* the 10-day deadline expired.

10

Based on the unrebutted evidence in the record before the Court, the ALJ's decision was issued on May 6. This was premature under the ALJ's own timeline regardless of whether the 10-day response period was measured from Attorney Duncan's April 27 receipt of the ALJ's letter (May 7) or a presumed April 28 receipt (May 8) with a five-day mailing period. *See* Pl.'s Mem. in Supp. at 8; Comm'r's Mem. in Supp. at 12. Even assuming Plaintiff was adequately apprised of Lace's interrogatory responses notwithstanding the incorrect exhibit number, Plaintiff's opportunity to respond was cut short when the ALJ prematurely issued the decision before the 10-day response period passed. At bottom, Plaintiff was not afforded the full opportunity to respond to this additional evidence the ALJ told him he would have.

The Court has no reason to believe the premature issuance of the ALJ's decision was in any way intentional. That the decision was dated for May 11 but instead issued on May 6 suggests an unfortunate administrative error. Under the unique circumstances of this case, the Court concludes that Plaintiff was not afforded a meaningful opportunity to confront Lace's interrogatory responses, upon which the ALJ relied in part to deny his claim. On remand, Plaintiff should be given a meaningful opportunity to address Lace's interrogatory responses.

## IV. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 25, is **DENIED**.

3. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March_____30_____, 2022                    _____*s/ Tony N. Leung*_____
                                                  Tony N. Leung
                                                  United States Magistrate Judge
                                                  District of Minnesota


                                                  *William E. v. Kijakazi*
                                                  Case No. 20-cv-1545 (TNL)